United States District Court
Southern District of Texas
**ENTERED**
April 28, 2020
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| REDEVELOPMENT CAPITAL PARTNERS LLC *and* SPIRIT FUNDING LLC, | § § § § § | CIVIL ACTION NO. 4:19-cv-03248 |
| Plaintiffs, | § § | |
| vs. | § § | JUDGE CHARLES ESKRIDGE |
| NORTH AMERICA RECOVERY MANAGEMENT LLC, *et al*, | § § § § § | |
| Defendants. | § | |

**MEMORANDUM OPINION AND ORDER
DENYING APPOINTMENT OF A RECEIVER**

Before the Court is an emergency motion by Plaintiffs Redevelopment Capital Partners LLC and Spirit Funding LLC for appointment of a receiver. Dkt 55. The motion is denied.

1. Background

The parties in this case are in the business of purchasing, remediating, and selling distressed properties. The distressed property at issue is an old paper plant in East Millinocket Maine that Defendant Katahdin KI 50 LLC purchased out of bankruptcy.

Several profit-sharing agreements are relevant to the dispute. Defendant North American Recovery Management and RCP entered into a profit-sharing agreement in August 2016. Dkt 42-1. NARM there agreed "to share with RCP fifty percent (50%) of the profits it receives from each Business transaction it sources, after financing costs." Id at 2.

NARM and RCO amended this agreement in November 2017. Dkt 42-2. This clarified that the property located at "50 Main St., East Millinocket, ME" was a covered business transaction under the profit-sharing agreement even though it was purchased through Katahdin, an affiliate of NARM. Id at 2.

In January 2017 NARM entered into an agreement to purchase a separate property in Coshocton Ohio. Spirit Funding loaned $3,000,000 to a third party as part of this transaction. NARM, Katahdin, and Spirit Funding entered into a profits pledge agreement as security for the loan. Dkt 42-3. That agreement provides that "any and all receipts Katahdin (an affiliate of NARM) receives related to the [East Millinocket Project] are hereby pledged to Spirit . . . in an amount up to $3,000,0000 plus all accrued interest." Id at 2.

Plaintiffs assert that Defendants have failed to account for and distribute income from the East Millinocket Project and thus are in breach of these agreements. Plaintiffs further allege that Defendants have distributed money directly to NARM and Katahdin's officers, Defendants Jason Inoff and Robert Katz.

Plaintiffs filed their original complaint and application for appointment of receiver, temporary restraining order, preliminary injunction, and permanent injunction on August 28, 2019. Dkt 1. The Court that day entered a temporary restraining order, which prohibited Defendants from selling assets of the East Millinocket Project. Dkt 4 at 2. This order has since lapsed.

On September 18th the Court held a preliminary injunction hearing where it also considered whether to appoint a receiver. Dkt 36 (transcript). The parties explained that the main profits expected from the project include proceeds from the site's demolition and eventual sale. The parties agreed that they would likely receive a demolition fee of $250,000. Dkt 36 at 29. They also noted the potential for sale of the property to the Township of East Millinocket for $1.2 to $1.5 million. Id at 19. Plaintiffs stated the Township had already allocated $1.25 million toward the sale. Id at 35. The Court expressed concern that principals of the Defendant companies could sell scrap metals on the side and pocket the proceeds, which would undermine potential

demolition proceeds. Id at 38. Defendant's counsel represented that this would not occur. Id at 39.

The Court also addressed Plaintiffs' request to appoint a receiver. The request was denied on reasoning that the best way to proceed was to enter an order requiring the proceeds of any sales to be paid into the registry of the Court, subject to sanctions of parties who fail to obey. Id at 52. Simply put, the dispute before it was (and still is) how to divide the proceeds under the profit-sharing agreements—not how to manage or sell the property. Those are business decisions over which the Court has no authority. Ibid.

On September 24th the Court entered an order that "any proceeds received from the sale of assets from the East Millinocket project, including any proceeds received in association with the sale of scrap, the demolition of the factory on the property, or the sale of the land, shall be deposited in the registry of the Court, pending adjudication(s) by the Court, or agreement of the parties." Dkt 30 at 1. The application for a preliminary injunction was also denied. Dkt 31.

On September 30th Plaintiffs filed an emergency request for a status conference and for reconsideration of their application for a preliminary injunction. Dkt 35. The Court denied the request, noting that it "has addressed the issues raised by the plaintiff and has instructed a path forward. It is the Court's view that the claims and/or complaints presented do not merit injunctive relief in that irreparable harm is not apparent. The claims asserted, if proven, may be rectified by a damage award." Dkt 40 at 1.

Plaintiffs filed their first amended complaint on October 18th. Dkt 42. The case was reassigned to this Court shortly after. Dkt 45.

This Court held a status conference at Plaintiffs' request on February 6, 2020. A request by Defendants' counsel to withdraw was granted. Plaintiffs also informed the Court that changed circumstances might necessitate appointment of a receiver. They were instructed to bring any motion believed necessary, to advise the Court if any requested relief concerned a prior ruling, and to

advise of any need for ruling on an expedited basis. See Minute Entry of February 6, 2020.

Plaintiffs then waited eleven weeks—until April 23rd and the week prior to a potential funding cutoff—to file the subject emergency motion for appointment of a receiver. Dkt 55. They seek a receiver for the assertedly "limited purposes of evaluating the pending contracts for the sale, evaluating the Metro Demolition Asset Purchase Agreement, consummating a sale of the East Millinocket Project property, managing demolition funds paid for demolition performed on the site, and supervising an orderly disbursement of proceeds." Id at ¶ 17.

Plaintiffs state that they have learned that Defendants entered into a $250,000 contract to sell the partial demolition of the East Millinocket Project to a company called Metro. They assert that Metro has already paid $20,000, but that this amount was never deposited into the Court's registry. Id at ¶ 11. Plaintiffs also state that the Township of East Millinocket has agreed to purchase the subject property for $1,450,000, following several months of negotiations between Defendants and the Township. And they assert that the Township's funding comes in the form of a grant, where approval for the funding assertedly will expire on April 30, 2020. Ibid.

The Court notes that Plaintiffs raised the same concern over the $20,000 in January. Dkt 50 at ¶ 8. And the Court finds that Plaintiffs have been aware of negotiations towards the potential sale as of September 2019 at the latest. See Dkt 36 at 34–35.

Defendants were ordered to file a response by April 27th. Dkt 57. Defendant Jason Inoff acting *pro se* requested and obtained permission to email his response to the Court. Dkt 59.

    2. Legal standard

A motion to appoint a receiver pursuant to Federal Rule of Civil Procedure 66 may be brought by anyone showing an interest in the subject property on sufficient grounds to justify conservation of the property. *Santibanez v Wier McMahon & Co*, 105 F3d 234, 241 (5th Cir 1997) (citations omitted). "A district court has broad authority to place assets into receivership 'to preserve and protect the property pending its final disposition.'" *Securities & Exchange Commission v Stanford International Bank Ltd*,

4

927 F3d 830, 840 (5th Cir 2019), quoting *Gordon v Washington*, 295 US 30, 37 (1935).

But appointment of a receiver is intended to be a rare event. "Receivership is 'an extraordinary remedy that should be employed with the utmost caution' and is justified only where there is a clear necessity to protect a party's interest in property, legal and less drastic equitable remedies are inadequate, and the benefits of receivership outweigh the burdens on the affected parties." *Netsphere Inc v Baron*, 703 F3d 296, 305 (5th Cir 2012), quoting Charles Wright and Arthur Miller, *Federal Practice and Procedure* § 2983 (3d ed 2012).

The Fifth Circuit directs the district court to consider a number of factors when determining whether circumstances warrant the appointment of a receiver:

- Existence of a valid claim by the party seeking the appointment;
- Probability that fraudulent conduct has occurred or will occur to frustrate that claim;
- Imminent danger that property will be concealed, lost, or diminished in value;
- Inadequacy of legal remedies;
- Lack of a less drastic equitable remedy; and
- Likelihood that appointing the receiver will do more good than harm.

*Santibanez*, 105 F3d at 241–42 (citations omitted).

The appointment is ultimately in the sound discretion of the court. Id at 241. And "the form and quantum of evidence required on a motion requesting the appointment of a receiver is a matter of judicial discretion." Ibid, quoting Charles Wright and Arthur Miller, *Federal Practice and Procedure* § 2983 (1973).

### 3. Analysis

It has already been determined once in this case that appointment of a receiver is not appropriate. Dkt 36 at 47. The parties were instead directed to deposit all proceeds from the Millinocket project into the Court's registry. Dkt 30. Absent

agreement by the parties, the Court would then divide the assets based on the profit-sharing agreements.

Plaintiffs provide no convincing reason to change course. Their motion does not address in depth the applicable factors, thus failing to make the requisite showing of entitlement to relief.

*As to validity of the claim.* RCP and Spirit claim that they both have a vested interest in the East Millinocket Project based on the profit-sharing agreements. True, but they do not have any ownership interest in the property or management rights over the project. As such, they point to no contractual terms indicating a present ability to control or direct ownership and disposition. They only have a right to profits generated by the project. That is a straightforward breach of contract claim for resolution at a later time—if and when breach might ever occur.

*As to probability of fraudulent conduct.* Plaintiffs contend that Defendants have "mismanaged the East Millinocket Project proceeds, breached the Agreements, and violated a previous court order to deposit proceeds of the East Millinocket Project into the registry of the Court." Dkt 55 at ¶ 15. But Plaintiffs present no evidence that Defendants have actually dissipated funds or are in the midst of perpetrating a fraud. And as determined at the preliminary injunction hearing, the proper remedy for failure to comply with the prior order to deposit any proceeds into the Court's registry is a motion for sanctions.

*As to imminent danger that property will be concealed, lost, or diminished in value.* Plaintiffs contend that imminent danger exists that the project's value will be diminished because the only identified purchaser will lose its funding on April 30, 2020. Plaintiffs attach an affidavit by a member of the Board of Selectmen of the Town of East Millinocket, Maine authorized to negotiate the acquisition of the East Millinocket property. Dkt 55-6. She avers that the town has been in discussions and negotiations with Katahdin for over fifteen months regarding the sale of the property. She also states that these negotiations have resulted in an asset purchase agreement that is now in final form with a purchase price of $1,450,000. She states that the Township will lose the funding allocated to this purchase on April 30, 2020. Id at 2. Far from supporting Plaintiff's assertions, this affidavit

6

shows that Defendants have negotiated the sale of the East Millinocket Project property at the higher end of what the parties estimated to be the value of the property. It also appears that both the Township and the Defendants continue to work diligently to finalize the sale. See also Dkt 59 (Inoff response noting that discussions to finalize agreement continue). And nothing suggests that appointment of a receiver will in some way finalize negotiations or otherwise require the Township to close the deal.

*As to inadequacy of legal remedies.* Plaintiffs state in conclusory fashion that money damages are insufficient to solve these "urgent issues." Dkt 55 at ¶ 17. But this Court has already determined that the "claims asserted, if proven, may be rectified by a damage award." Dkt 40 at 1. Plaintiffs make no attempt to establish why this does not remain so.

*As to lack of a less drastic equitable remedy.* Appointment of a receiver is a drastic remedy. See *Capital Funding, LLC v TLTX Holdings, LLC*, 2020 WL 264106, *6 (ND Tex). Plaintiffs assert that "no less drastic equitable remedies exist" without considering any. Dkt 55 at ¶ 17. Yet a less drastic equitable remedy is already in place—the parties must deposit any proceeds into the Court's registry on penalty of sanction.

*As to the balance of harms.* Plaintiffs claim that Defendants will not suffer harm if a receiver is appointed. They assert that "appointment will merely remove Defendants' responsibility and authority, and allow a structure to account for the finances of the East Millinocket project and safely sell the East Millinocket project property to the benefit of all parties." Id at ¶ 18. Plaintiffs argument assumes that a court-appointed receiver will be in a better position to finalize the sale of the East Millinocket Project property with the Township. But they offer no basis for this conclusion. Nor do they offer any reason to believe that injecting a third party into these negotiations at the eleventh hour while stripping Defendants of their authority to negotiate sale of the property will produce the hoped-for result.

4. Conclusion

Defendants should have no doubt that this Court will strictly enforce its prior orders and impose severe sanctions if warranted

7

for deliberate conduct contrary to those orders. But Plaintiffs have not made the requisite showing of entitlement to appointment of a receiver.

The emergency motion for appointment of a receiver is DENIED. Dkt 55.

SO ORDERED.

Signed on April 28, 2020, at Houston, Texas.

Hon. Charles Eskridge
United States District Judge